IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTELLECTUAL VENTURES II LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>NEXTEL OPERATIONS, INC. AND SPRINT SPECTRUM L.P.,<br><br>    Defendants. | Civil Action No. 13-cv-_____-LPS<br><br>JURY TRIAL DEMANDED |

## SECOND AMENDED COMPLAINT

Pursuant to the Court's Order dated March 26, 2013 (Dkt. 59), Plaintiff Intellectual Ventures II LLC, for its Second Amended Complaint against Defendants Nextel Operations, Inc. and Sprint Spectrum L.P. (d/b/a/ Sprint PCS) (collectively, "Sprint") hereby alleges as follows:

## PARTIES

1.      Intellectual Ventures II is a Delaware limited liability company with its principal place of business located in Bellevue, Washington.

2.      Defendant Nextel Operations, Inc. ("Nextel") is a corporation organized and existing under the laws of Delaware with its principal place of business at 6200 Sprint Parkway, Overland Park, Kansas 66251.

3.      Defendant Sprint Spectrum L.P. d/b/a/ Sprint PCS ("Sprint PCS") is a Delaware limited partnership with its principal place of business at 6200 Sprint Parkway, Overland Park, Kansas 66251.

## NATURE OF THE ACTION

4. This is a civil action for the infringement of U.S. Patent No. 6,115,737 and U.S. Patent No. 5,339,352 (collectively, the "Patents-in-Suit") under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq.*

6. This Court has personal jurisdiction over Sprint because it has committed acts of infringement in this District in violation of 35 U.S.C. § 271, and has placed infringing products into the stream of commerce with the knowledge and/or understanding that such products are used and sold in this District. These acts have caused and continue to cause injury to Intellectual Ventures II within the District. Sprint derives substantial revenue from the sale of infringing services and products distributed within the District, and/or expects or should reasonably expect its actions to have consequences within the District, and derives substantial revenue from interstate and international commerce.

7. Sprint maintains places of business within the District from which it sells products or services to residents of the District. Additionally, Sprint provides telecommunications services to customers through base stations, switching equipment, and other components of their telecommunications networks, which are located in the District.

8. Further, Nextel and Sprint PCS are subject to this Court's jurisdiction by virtue of their incorporation in Delaware and their availing themselves of the laws and protections of this District

9.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## THE PATENTS-IN-SUIT

10.     Paragraphs 1-9 are reincorporated by reference as if fully set forth herein.

11.     On September 5, 2000, United States Patent No. 6,115,737 ("the '737 Patent"), titled "System And Method For Accessing Customer Contact Services Over A Network," was duly and lawfully issued by the United States Patent and Trademark Office ("PTO").  The '737 Patent is attached hereto as Exhibit F.

12.     Intellectual Ventures II owns all substantial right, title, and interest in the '737 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

13.     On August 16, 1994, United States Patent No. 5,339,352 ("the '352 Patent"), titled "Directory Assistance Call Completion Via Mobile Systems," was duly and lawfully issued by the PTO.  The '352 Patent is attached hereto as Exhibit G.

14.     Intellectual Ventures II owns all substantial right, title, and interest in the '352 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

## FACTUAL BACKGROUND

### Intellectual Ventures

15.     Intellectual Ventures Management, LLC ("Intellectual Ventures") was founded in 2000.  Since its founding, Intellectual Ventures has been deeply involved in the business of invention.  Intellectual Ventures creates inventions and files patent applications for those inventions; collaborates with others to develop and patent inventions; and acquires and licenses

patents from individual inventors, universities, and other institutions. A significant aspect of Intellectual Ventures' business is managing Intellectual Ventures II.

16. Intellectual Ventures' business includes purchasing important inventions from individual inventors and institutions and then licensing the inventions to those who need them. Through this business, Intellectual Ventures allows inventors to reap a financial reward from their innovations, a frequently difficult task for individual inventors. To date, Intellectual Ventures has built a portfolio of more than 35,000 assets and more than 3,000 of those patents and patent applications are the result of Intellectual Ventures' own invention efforts, both in-house and with Intellectual Ventures' inventor network. Intellectual Ventures has paid individual inventors more than $400 million for their inventions. Intellectual Ventures, in turn, has earned more than $2 billion by licensing these patents to some of the world's most innovative and successful technology companies who continue to use them to make computer equipment, software, semiconductor devices, consumer products, and a host of other products.

17. Intellectual Ventures also develops its own inventions. Intellectual Ventures has a staff of scientists and engineers who develop ideas in a broad range of fields, including agriculture, computer hardware, life sciences, medical devices, semiconductors, and software. Intellectual Ventures has invested millions of dollars developing such ideas and has filed hundreds of patent applications on its inventions every year, making it one of the top patent filers in the world. Intellectual Ventures also has invested in laboratory facilities to assist with the development and testing of new ideas.

18. Intellectual Ventures also develops inventions by collaborating with inventors and research institutions around the world. For example, Intellectual Ventures has developed inventions by selecting a technical challenge, requesting proposals for inventions to solve the

challenge from inventors and institutions, selecting the most promising ideas, rewarding the inventors and institutions for their contributions, and filing patent applications on the ideas. Intellectual Ventures has invested millions of dollars in this way and has created a network of more than 3000 inventors worldwide.

### The National Telecommunications Network

19.     Sprint PCS and Nextel are in the business of selling and offering for sale mobile phones and wireless phone services to customers throughout the United States, including the state of Delaware.

20.     Other wireless service carriers and related entities offer similar products and services, including AT&T Mobility LLC (d/b/a AT&T Mobility), AT&T Mobility II LLC (d/b/a AT&T Mobility), New Cingular Wireless Services, Inc. (d/b/a AT&T Mobility) (AT&T Mobility LLC, AT&T Mobility II LLC, and New Cingular Wireless Services, Inc. collectively, "AT&T Mobility"), SBC Internet Services, Inc. (d/b/a AT&T Entertainment Services, AT&T Internet Services, and Pacific Bell Internet Services), Wayport, Inc., (d/b/a AT&T Wi-Fi Services) (AT&T Mobility, SBC Internet Services, Inc., and Wayport, Inc. collectively, "AT&T"); T-Mobile USA, Inc. ("T-Mobile"); United States Cellular Corporation, and Telephone and Data Systems, Inc., (United States Cellular Corporation and Telephone and Data Systems, Inc., collectively "U.S. Cellular").  As used herein, "Carriers" will refer to AT&T Mobility, T-Mobile, Sprint, and U.S. Cellular.

21.     Collectively, the Carriers have created an integrated national network for the provision of wireless telecommunication services to their customers.  Through bilateral agreements, participation in standard bodies and cooperation in the adoption of compatible technology, the Carriers have created a national telecommunications network allowing customers

5

of each Carrier to communicate with each other over a vast wireless network. The national wireless network is, in effect, one giant data communications network, from which each of the Carriers gains significant advantage and revenue.

22. The Carriers have entered into a series of inter-carrier agreements through which they act as the agents for each other, and are contractually obligated to each other, in connection with the provision of wireless telecommunication services and have jointly created an infringing system. By way of example:

23. AT&T Wireless, Cingular Wireless (on information and belief, entities which became AT&T Mobility), Nextel, Sprint PCS, T-Mobile, and U.S. Cellular agreed to create a system for the transfer of MMS messages through a national inter-carrier system. An MMS message is a multimedia message, containing a picture, video or multimedia attachment, and which can be sent from a mobile phone to another mobile phone, and there are billions of such messages sent each year.

24. CTIA-The Wireless Association® is an international nonprofit membership organization that has represented the wireless communications industry since 1984. *See* http://www.ctia.org/aboutCTIA/. Pursuant to guidelines agreed to by the Carriers, they created a system to enable the transfer of "phone number addressed mobile-to-mobile MMS messages across participating wireless carrier networks in the U.S." Inter-Carrier MMS Messaging Guidelines, Feature Set & Interfaces, Revision: 1.0, Date: October 21, 2004 (attached as Exhibit P) at p.6.

25. As stated in the Inter-Carrier MMS Messaging Guidelines: "The purpose of MMS Interoperability is to ensure that carriers can pass mobile originated Multimedia Messages (MMS) across participating carriers' networks. The group's objective is to identify and define

the involved interfaces, and to agree upon a common feature set that will be supported by all participating carriers." *Id.*

26.     On July 7, 2005, T-Mobile USA Inc., Cingular Wireless L.L.C., and Sprint PCS announced that their networks were now MMS interoperable. "T-Mobile USA Inc. users can exchange pictures and video clips with subscribers of both Cingular Wireless L.L.C. and Sprint PCS, the three carriers announced." *See T-Mobile USA, Cingular make MMS interoperability announcements*, located at http://www.rcrwireless.com/article/20050707/sub/t-mobile-usa-cingular-make-mms-interoperability-announcements/ (attached as Exhibit Q).

27.     In a press release on July 7, 2005 T-Mobile explained further the agreement with Sprint: "It's called Multimedia Messaging Services (MMS) interoperability. It allows T-Mobile and Sprint customers to send and receive picture messages across carriers." *See T-Mobile USA and Sprint Make it a Snap for Customers to Share Pictures and Text Messages - Sprint and T-Mobile Customers can use Wireless Phones to Exchange Picture Messages*, T-Mobile press release, July 7, 2005, located at http://newsroom.t-mobile.com/articles/t-mobile-Sprint-MMS (attached as Exhibit R).

28.     Upon information and belief, AT&T Mobility has agreed with the other Carriers to deliver their MMS messages to AT&T Mobility's customers pursuant to the CTIA Guidelines.

29.     Upon information and belief, U.S. Cellular has agreed with the other Carriers to deliver their MMS messages to U.S. Cellular's customers pursuant to the CTIA Guidelines.

30.     The Carriers act as agents for each other, and are contractually obligated to each other, in the transmission of inter-carrier MMS messages. Each wireless carrier thus facilitates and encourages the others to engage in infringing acts in relation to the transfer of MMS messages.

31.     Upon information and belief, the Carriers transfer traffic between each other, thereby acting as agents for the completion of calls pursuant to their contractual obligations in their roaming agreements.  In particular, upon information and belief, starting at least as early as April 2003, T-Mobile and AT&T Mobility entered into one or more roaming agreement which allow T-Mobile wireless customers to complete calls through the AT&T Mobility's network, and AT&T Mobility customers to complete calls through the T-Mobile wireless network.  Each wireless carrier which completes calls for the other acts as an agent for the other, and fulfills their contractual obligations, in completing the calls.

32.     Upon information and belief, the Carriers share amongst each other phone numbers and identification information which allows them to identify whether a call originating in one carrier's network is to be completed in another carrier's network and routing information which allows the smooth transfer of calls, SMS text messages and MMS messages between networks.  Carriers update this information on a regular basis to insure the smooth transfer of calls between carriers.

33.     Upon information and belief, the Carriers have agreed bilaterally or through participation in standards bodies to use Intellectual Ventures' patented technology in violation of Intellectual Ventures' patent rights.

**COUNT I**

**(Infringement of the '352 Patent)**

34.     Paragraphs 1-33 are incorporated by reference as if fully restated herein.

35.     Sprint has infringed the '352 Patent, literally and/or under the doctrine of equivalents, by using or performing one or more of the method claims without authority and in

violation of 35 U.S.C. § 271(a).  Among the infringing services is Sprint's 411 service for wireless carriers.

36.	Intellectual Ventures II has suffered damage as a result of Sprint's infringement of the '352 Patent.

## COUNT II

### (Infringement of the '737 Patent)

37.	Paragraphs 1-36 are incorporated by reference as if fully restated herein.

38.	Sprint, either alone or in conjunction with others, has infringed the '737 Patent, literally and/or under the doctrine of equivalents, by using or performing one or more of the method claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services is Sprint's customer website, which enables customers to make changes to their service plans and/or personal information over the Internet.

39.	Sprint infringes the '737 Patent alone through the operation and functionality of its website, through which its customers can make changes to their service plans and/or personal information over the Internet. Alternatively, Sprint and its customers, who use Sprint's website to make changes to their service plans and/or personal information over the Internet, jointly infringe the '737 Patent.  Sprint exercises control and direction over the entire performance of the claimed method such that the performance of every step is controlled by Sprint, who acts as a master-mind.

40.	By way of non-limiting example, when a Sprint customer accesses his or her account online, Sprint infringes the '737 Patent.  Sprint induces its subscribers to perform one or more steps of the claimed method to access and/or modify customer-specific information, and Sprint performs the remaining steps of the method.

41.   Intellectual Ventures II has suffered damage as a result of Sprint's infringement of the '737 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Intellectual Ventures II respectfully requests the following relief:

a)   A judgment that U.S. Patent Nos. 6,115,737 and 5,339,352 are valid and enforceable.

b)   A judgment that Sprint has infringed the '737 Patent;

c)   A judgment that Sprint has infringed the '352 Patent;

d)   An order enjoining Sprint and its officers, agents, servants and employees, privies, and all persons in active concert or participation with it, from further infringement of said patents;

e)   A judgment that Intellectual Ventures II be awarded all appropriate damages under 35 U.S.C. § 284 for Sprint's past infringement, and any continuing or future infringement of the Patents-in-Suit, up until the date such judgment is entered, including pre and post judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Intellectual Ventures II for Sprint's infringement, an accounting:

   i)   that this case be declared exceptional within the meaning of 35 U.S.C. § 285 and that Intellectual Ventures II be awarded its reasonable attorneys' fees that it incurs in prosecuting this action;

   ii)  that Intellectual Ventures II be awarded costs, and expenses that it incurs in prosecuting this action; and

      iii)     that Intellectual Ventures II be awarded such further relief at law or in equity as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Intellectual Ventures II hereby demands trial by jury on all claims and issues so triable.

DATED:  September 23, 2013

Respectfully submitted,

FARNAN LLP

By: _/s/  Brian Farnan_____
Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com

OF COUNSEL:
Martin J. Black -- LEAD ATTORNEY
martin.black@dechert.com
DECHERT LLP
Cira Centre 2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

Jeffrey B. Plies
jeffrey.plies@dechert.com
DECHERT LLP
300 W. 6th Street
Suite 2010
Austin, TX 78701
(512) 394-3000

Stephen J. Akerley
stephen.akerley@dechert.com
Justin F. Boyce
justin.boyce@dechert.com
DECHERT LLP
2440 W. El Camino Real Suite 700
Mountain View, CA 94040-1499
(650) 813-4800

*Counsel for Plaintiff Intellectual Ventures II LLC*